**BURHENN, et, Plaintiff-Appellees, v. BURHENN, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20791.   Decided July 6, 1948.

Harry A. Gillis, Cleveland, for plaintiffs-appellees.
Wm. M. Byrnes, Gerald J. Levelle, Cleveland, for defendant-appellant.

## OPINION

By HURD, PJ.

This action in equity to declare a trust for an accounting and equitable relief, originated in the common pleas court of Cuyahoga County and came before this court for trial 'de novo' on questions of law and fact.  By stipulation of the parties the case is submitted to this court on the transcript of the testimony taken in the trial court with additional evidence and exhibits in the trial in common pleas court. At the time of trial in this court the defendant appellant offered in evidence defendant's Court of Appeals' Exhibits 1 to 11 inclusive at which time this court reserved ruling but thereafter admitted all of said proffered exhibits in evidence.

On March 8, 1948 the following entry was made upon the docket of this court:

"Decree for plaintiffs appellees, as in common pleas court, impressing a trust in their favor each in an amount of an undivided one-third interest in the premises in question."

Thereafter on March 11, the defendant filed his motion for a new trial and this opinion is rendered on said motion.

For purposes of brevity and convenience the parties will be hereinafter referred to as plaintiffs and defendant as they appeared in the common pleas court.

The findings and conclusions of Newcomb, J., of common pleas court, appear in the body of the court's journal entry as follows:

"This cause came on to be heard this 1st day of March, 1947 upon the petition of plaintiffs, the answer of defendant and upon the evidence; and the court being fully informed in the premises, makes the following findings, viz:

'That the three parties herein are all related by blood, the plaintiff Anna C. Burhenn being the mother of the plaintiff, Mabel C. Burhenn and of the defendant, Ellsworth W. Burhenn. That plaintiff, Anna C. Burhenn on or about July 12, 1919. purchased on a land contract the lot described in the petition for $1750.00 and paid for the same out of her funds; that on or about July 8, 1924 she caused record title thereto to be placed for convenience in the name of Ellsworth W. Burhenn and that until and as hereinafter set forth, she retained the beneficial interest in said lot for herself:

That on or about March 1925, the said three parties negotiated a construction mortgage and with the proceeds therefrom, erected upon said lot a house and garage; that defendant Ellsworth W. Burhenn was employed as a carpenter thereon and out of said mortgage funds received full wages for his services; and that said mortgage and other mortgages placed on the premises were later retired and paid out of the common fund of the three parties as hereinafter set forth;

That on or about June 29, 1925 the three parties herein moved from their former residence to the premises described in the petition and have ever since occupied the same as their home;

That on or about September, 1925, Anna C. Burhenn, Mabel C. Burhenn and Ellsworth W. Burhenn, orally agreed one with the other that they would live in, pay for and together own the said house and lot; That on her part Anna C. Burhenn agreed to contribute said lot and to furnish her services as housekeeper and manager of the financing of the project and that out of the sums contributed to her by her son and daughter she would pay the living expenses of the three, the mortgage payments of principal and interest and the taxes and expenses of maintenance of the premises; and that on their parts plaintiff, Mabel C. Burhenn, and the defendant, Ellsworth W. Burhenn agreed to pay to their mother the sum

of $25.00 each per week from which common fund plaintiff, Anna C. Burhenn agreed to make the payments before mentioned.

That plaintiff, Anna C. Burhenn contributed the said lot and performed all of the services required of her to be performed pursuant to such agreement; and in addition thereto contributed to the common fund an additional sum received by her from an alimony settlement and sums saved by her from taking in roomers and boarders;

That plaintiff, Mabel C. Burhenn, regularly paid the sum of $25.00 per week required of her to be contributed to the common fund, pursuant to such agreement; and in addition thereto for a period of years contributed to the common fund an additional sum of $5.00 per week.

That defendant, Ellsworth W. Burhenn was not regularly employed and could not or did not regularly pay the full sum of $25.00 per week required of him to be contributed to the common fund; that the premiums on life insurance policy on his life which was cashed in by him and the proceeds thereof duly applied on the balance of the indebtedness owed on said premises, were paid by plaintiff, Anna C. Burhenn out of the common fund placed in her hands, in part for such purpose; and that defendant, Ellsworth W. Burhenn has not fully made the payments required of him to be contributed to the common fund pursuant to such agreement.

That the successive loans obtained by the three parties in the purchase of the premises, viz; $6500.00 from The Heights Savings & Loan Company, $552.00 from The Morris Plan Bank and $5,000.00 from The Equitable Life Assurance Society of the United States, together with the interest payments thereon, were paid by plaintiff, Anna C. Burhenn out of the sums contributed to the common fund by plaintiff, Mabel C. Burhenn and by defendant Ellsworth W. Burhenn; that said payments and the taxes and expenses of maintenance of the premises were paid by plaintiff, Anna C. Burhenn out of said common fund for the benefit of the three parties herein pursuant to said oral agreement of September, 1925; and that plaintiffs, Anna C. Burhenn and Mabel C. Burhenn have fully contributed and/or performed the services required of them and more, but have indicated to the court their willingness to accept and have an undivided one-third interest in and to the said premises;

The court further finds that defendant, Ellsworth W. Burhenn holds record title to the premises described in the petition for the respective equal benefit of Anna C. Burhenn and Mabel C. Burhenn and Ellsworth W. Burhenn; that said

premises should be impressed with a trust in accordance therewith and that defendant, Ellsworth W. Burhenn, should be ordered to convey to each of the plaintiffs respectively, Anna C. Burhenn and Mabel C. Burhenn, by good and sufficient deed, an undivided one-third interest in said premises."

Thereafter follow the judgment and the decree of the court impressing a trust in accordance with the finding and conclusions.

The record in this case is an extended one of some 367 pages accompanied by numerous and voluminous exhibits received in evidence in the trial court, with additional exhibits received in this court.

The case was hotly contested by very able counsel and was tried to a very able, learned and experienced trial judge who had the opportunity not afforded this court of observing the appearance of the witnesses on the witness stand, their manner of testifying, their candor or lack or candor, their intelligence, interest or bias and all of the attitudes and characteristics of witnesses which are immediately observable by the trial judge who is charged with the duty as is this court of determining wherein the truth lies in the conflicting evidence offered by the witnesses.

The case also involves serious questions of veracity in a property dispute between members of the same family who up to the time of this hearing were still dwelling together; with a mother and daughter plaintiffs arrayed on one side and with the son and brother defendant on the other side of the trial table.

We have carefully reviewed the evidence as presented in the trial court and the additional evidence offered here and find that we must adhere to the decision originally made herein, as set forth on the trial docket of this court quoted above.

The plaintiffs had the burden of establishing the allegations of the petition by clear and convincing evidence. A review of the entire record leads us to the conclusion that the burden of proof thus placed upon the plaintiffs by law was successfully sustained by them throughout the trial of the case and that the judgment of the trial court was fully consistent therewith.

We can see no advantage in or necessity for a detailed analysis of the evidence at this time. Suffice it to say that in the opinion of a majority of this court the testimony of the mother and sister, plaintiffs herein as shown by an examination of the entire record together with the testimony of corroborating witnesses and the documentary evidence as

shown by the record, adequately, clearly and convincingly support the findings of fact, conclusions of law and judgment of the trial court as hereinbefore set forth at length.

Therefore the motion for new trial is overruled. Exceptions are allowed.

MORGAN, J, concurs, SKEEL, J, dissents. (See dissenting opinion)

## DISSENTING OPINION

By SKEEL, J. (Dissenting.)

This action comes to this court on an appeal on questions of law and fact. The plaintiffs who are the mother and sister of the defendant, filed their petition alleging that the defendant holds the legal title to a certain house and lot in the City of Cleveland Heights. The plaintiffs claim that they are in law and equity entitled to an interest therein and seek to impress a trust upon the said real estate to the extent of their respective interests. The defendant claims to be the absolute owner of such property.

Anna Burhenn in July of 1919 looked at some vacant property on Silsby Road in Cleveland Heights. The purchase price of one of the lots she inspected was $1750.00. She took out a contract for the purchase of this lot which lot is now known as 3338 Silsby Road. This is now the residence of all of the parties.

At the time the contract was entered into, Anna Burhenn made a down payment of $430.00.

Anna Burhenn at the time this transaction was concluded, was living with her husband, her daughter, Mable and her son, the defendant herein, at 1250 East 103 Street. There were serious domestic difficulties between the plaintiff and her husband which finally resulted in their separation in 1923 and a divorce in 1930.

When the land contract was made out it was made in the name of this defendant as vendee or purchaser. Plaintiff, Anna Burhenn, testified that she put the lot in her son's name with his consent, because of the difficulties she was experiencing with her husband. She also said that the $430.00 down payment was part of about $800.00 which she realized from the forced sale of the property at 1250 East 103 Street which property had been held in her name. This fact, (that the down payment was Anna Burhenn's money) is denied by the defendant. The salesman who sold the lot for the Rapid Transit Land Company was available as a witness but was not called by the plaintiff. If Anna Burhenn's story was true,

his testimony would have been strong corroboration. Payments were made on the lot at the rate of $17.00 or more per month until it was paid for in 1924, at which time it was deeded to the defendant. There were two payments in excess in amount, that is of $100.00, one on Dec. 27, 1920 and one on Dec. 30, 1921, of any of the other payments made on the lot. Anna Burhenn testified that these payments were made out of accumulated savings partly at least from money which she earned by doing day work for neighborhood families, after the contract was entered into. This, in spite of the fact that beginning in July, 1919 she assumed the responsibility of caring for a niece who was only a few months old and there were no other members of the family at home during the day to care for such infant.

One of the rebuttal witnesses, called by the plaintiff, who lived upstairs at 1250 East 103 Street at the time, testified that after the baby came Mrs. Burhenn did not do outside work. That the period when she did do day work was between 1916 and 1919. Also, Mrs. Burhenn, in attempting to explain a Christmas gift of $100.00, one of which she admitted she gave to Ellsworth, testified that such gift was made Christmas Day of 1917 and not in 1920 or 1921, as testified to by Ellsworth Burhenn. At this time (1917) Ellsworth was only 16 years old and the circumstances surrounding the Burhenn family makes Anna Burhenn's explanation highly improbable.

The plaintiff, Anna Burhenn's explanation of the source of the down payment of $430.00 is equally questionable. Mabel Burhenn testified that her mother had the money which she had received from the sale of the East 103rd St. property, on deposit in the Society for Savings Bank. Certainly the bank records would have been conclusive evidence upon that point. But no such evidence was presented. Also during the period 1919 to 1924, this plaintiff was in poor health and was experiencing domestic difficulties terminating in her requesting her husband to leave while she was in the hospital recovering from an operation in 1923.

The defendant who claims to have made all of the payments upon the lot, left school at the age of 16 years and began to work as a truck driver for a neighborhood grocery store, then later, as a toolmaker in a factory, and finally as a carpenter when he reached the age of 18 years. Prior to leaving school he sold newspapers. During the period 1918 to 1920 the purchase of Victory Bonds was something everybody participated in and to do so was a display of good citizenship. The defendant claims that he purchased bonds during that period and that he sold them to make the down-

payment. This claim is far more probable than that of Anna Burhenn's claim that she drew money from the bank for that purpose (the record of such withdrawal not being produced).

After the lot had been paid for, the defendant and plaintiffs planned to build a house. The continued occupancy of the property on East 103rd Street became uncertain because of some conduct of defendant. Financing was arranged and the building begun in early 1925. The building loan of $6500.00 secured by the help of Mabel Burhenn and her employer from The Heights Savings & Loan Company, was not sufficient and so the defendant borrowed from his sister $1440.00. The amount of this loan was computed after the building was completed by adding all of the advances made to defendant, Ellsworth Burhenn, by his sister. The balance due was then evidenced by a cognovit promissory note for $1440.00 calling for 8% interest and due in 3 years, which note was prepared by Mabel Burhenn, signed by the defendant and his wife, now deceased. The mortgage of $6500.00 was refinanced in 1930 by securing a new mortgage from The Equitable Life Assurance Company. The amount of this loan was $5000.00. To make up the difference between the old and new mortgage of almost $1000.00, $530.00 was borrowed from The Morris Plan Bank secured by mortgage on the Silsby Road property and Anna Burhenn who had been divorced from her husband, loaned to Ellsworth Burhenn $450.00. The insurance company in making the loan required Ellsworth Burhenn to take out a $5000.00 life insurance policy in which Mabel Burhenn was named the beneficiary. A great deal is made by the plaintiff of the fact that the premiums on this policy were paid out of funds given to the mother by Mabel and Ellsworth Burhenn for the conduct of the household affairs. The fact is, that when this loan was paid off in 1943, this policy was surrendered and the cash value received was in part used in payment of the loan.

At this time, 1943, the defendant asked his sister to figure out the amount due on his note. Her answer was $5594.50, the original amount loaned increased by interest at the rate of 8% per annum compounded annually, in spite of the fact that 8% mortgage obligations in commercial transactions were almost unheard of after 1930.

The defendant called upon a lawyer friend to help negotiate a settlement, which negotiations were unsuccessful. It might be noted that during these negotiations Mabel Burhenn did not once mention or suggest in any way that she owned any part of the property. The negotiations having failed, Mabel Burhenn without notice of any kind, although she

lived in the same house with the defendant, took judgment on the said cognovit note in the sum of $5909.62 and issued execution upon the property, alleging that Ellsworth Burhenn was the owner. And were it not for the fact that her lawyer told the defendant of the pending sale on execution, undoubtedly the sale would have been made and the defendant deprived of his property without his knowledge. Upon notice of such pending sale, the defendant succeeded in having the judgment vacated and upon trial the evidence established that the debt was barred by the statute of limitations.

It should be noted in this connection that it is subject to grave doubt whether or not a sister, who demands of her brother the payment of 8% compound interest for a loan, would be likely to cause her own interest in property to be sold is satisfaction of such debt.

There is much made by the plaintiffs of the fact that during the depression the defendant was out of work and was not always able to contribute his share for the payment of bills and living expenses to his mother. It had been the plan of this family for the son and daughter to each pay the sum of $25.00 per week to the mother and she took charge of all financial affairs. In this connection the record shows that in 1936 the defendant purchased a new Plymouth automobile and gave it to his sister. He had been using her old car to take his tools from job to job. Such act would seem to indicate that the defendant was not too far behind in family obligations.

The plaintiffs in this action as above indicated seek to impress a trust on the property at 3338 Silsby Road to the extent of their respective interests. Any interest that they might have must be established by clear and convincing proof. A careful consideration of all the evidence shows that they have failed to maintain their contentions by that degree of proof.

The motion for a new trial should be granted.